IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARILYN CROSSLEY, | |
| Plaintiff, | Case No. 3:20-cv-319 |
| vs. | Judge Timothy S. Black |
| KETTERING ADVENTIST HEALTHCARE d/b/a KETTERING HEALTH NETWORK | Jury Demand Endorsed Hereon |
| and | |
| BELINDA ISAAC | |
| Defendants. | |

## AMENDED COMPLAINT

NOW COMES Plaintiff Marilyn Crossley ("Crossley" or "Plaintiff") and hereby states her Amended Complaint for damages against Defendant Kettering Health Network ("Kettering") and Defendant Belinda Isaac ("Isaac") (Kettering and Isaac are collectively referred to herein as "Defendants") as follows:

### The Parties

1. Plaintiff is a natural person residing in Springfield, Ohio.

2. Upon information and belief, Kettering is an Ohio not-for-profit corporation with a principal place of business in the Southern District of Ohio.

3. Upon information and belief, Isaac is an individual residing in the Southern District of Ohio.

4. At all times relevant herein, Crossley was an employee of Kettering as defined by

the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Ohio Revised Code 4112, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et. seq. ("ADEA").

5. Isaac was Crossley's supervisor at Kettering from 2010 until Crossley's wrongful termination in or around August 2019.

6. Kettering is a covered "employer" as that term is defined by the ADA, ADEA and O.R.C. 4112.

## Jurisdiction and Venue

7. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1331.

8. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

9. This action is brought pursuant to the ADA, ADEA and O.R.C. 4112.

10. Venue is proper pursuant to 28 U.S.C. §1391, because Kettering has a facility in Montgomery County, Ohio, the events in question took place in Montgomery county, Ohio, and Isaac resides in Montgomery County, Ohio.

11. Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of her Right to Sue letter from the EEOC, as the EEOC issued the Right to Sue Letter on May 14, 2020. (Right to Sue Letter is attached hereto at Exhibit A.)

## Factual Background

12. Crossley is 68 years old and suffers from Ehlers-Danlos Syndrome (a connective tissue disorder which causes pain and weakness) and Multiple Myeloma (an incurable blood cancer which causes, among other things, shortness of breath and weakness).

13. Crossley worked as a Speech Pathologist at the NeuroRehab and Balance Center at Kettering from May 21, 2001 to August 20, 2019. On August 20, 2019, Kettering terminated Crossley because of her age and disabilities.

14. While employed as a Speech Pathologist at Kettering, Crossley's responsibilities included treating and rehabilitating patients with neurological disorders in speech, voice, cognition, swallowing and movement.

15. At Kettering, the standard practice for scheduling patients with Speech Pathologists is to assign an equal number of patients to each Speech Pathologist, on a rotating basis.

16. During Crossley's employment with Kettering, Defendants engaged in systematic and continuous discrimination against Crossley due to her age and disabilities.

17. In or around early 2014, Defendants, without notice to Crossley, began removing concussion patients from Crossley's schedule allegedly because Crossley was not part of the "set group of people that treat concussion patients," despite the fact that Crossley had the requisite competencies and treated concussion patients for years at Kettering.

18. Beginning in early 2017, Isaac began to repeatedly ask Crossley when she planned to retire and why she was not already retired. Although Crossley never expressed an interest in retiring, Isaac offered for Crossley to train a younger speech pathologist and then retire.

19. Crossley's joint disorder made it difficult for her to walk far distances. So, in or around 2005, Crossley's physician provided her with a handicapped parking permit. Starting in

2005, Crossley began to use her handicapped parking permit to park in one of the handicapped parking spaces at Kettering. In the Spring of 2017, Isaac approached Crossley and told her she was not to park in the handicapped parking spaces at Kettering despite the fact that Crossley had a validly issued and properly displayed handicapped parking permit. Isaac warned Crossley that she would report Crossley to Human Resources if Crossley continued to utilize handicapped parking spaces at Kettering.

20. From November 27, 2018 through March 4, 2019, Crossley took a leave of absence from work to undergo a stem cell transplant, a recommended treatment for Multiple Myeloma. Crossley's doctor told her she could return to work full-time following her recovery and Crossley wanted to return to work full-time. However, as Crossley prepared to return to work after her medical leave of absence, Isaac discouraged her from coming back to work full-time by repeatedly suggesting that she take more time off or only return to work part-time.

21. Speech Pathologists at Kettering are required to have an active CPR certification. In or around early 2019, Defendants removed Crossley from the schedule due to an alleged lapse in Crossley's required CPR certification. Kettering offered CPR certification and renewal on-site, however Kettering's dummy was broken, making it difficult for even non-disabled employees to pass CPR certification requirements. Due to her disabilities, Crossley knew she would have difficulty completing the required amount of chest compressions on the dummy provided by Kettering, so Crossley asked Kettering if it would provide her with an alternate dummy or allow her to renew her CPR certification through a third party. Although another non-disabled employee was provided an alternative dummy and computer, Defendants refused to grant Crossley the same accommodations for renewing her CPR certification. Additionally, even though at least one other non-disabled employee was granted permission to renew their CPR

certification through the American Red Cross, Defendants insisted that Crossley could only renew her CPR certification through Kettering (and not a third party).

22. Crossley suspected she would be unable to complete the chest compressions in the time and manner required to her CPR renewal certification through Kettering due to her disabilities. So, Crossley provided Kettering with a note from her doctor documenting her CPR restriction and requested a reasonable accommodation from Kettering. Defendants informed Mrs. Crossley that Kettering would "accommodate" her disability by ensuring that an employee that could perform CPR would always be scheduled during Crossley's shifts. However, Defendants then told Crossley that other employees could not be forced to be made available to mirror Crossley's schedule, so Crossley could not be scheduled on a full-time basis. Although there were other employees scheduled and present during all of Crossley's full-time shifts, Crossley was reduced to part-time status, removing a significant portion of her pay and many of her insurance benefits.

23. In or around August of 2019, Crossley received a notification from Kettering that she was deficient on certain vaccines that were required for employees. Thereafter, Crossley and Kettering exchanged emails wherein Crossley advised Kettering that she could not receive certain vaccinations due to her recent stem cell transplant. Crossley's oncologist sent Kettering a note advising it of the same, which Kettering rejected. Kettering continued to require that Crossley, against Crossley's doctor's advice, receive certain vaccinations (which would have been detrimental or fatal, given her disabilities and compromised immune system) unless she procured a second doctor's note. Mrs. Crossley submitted a second doctors' note to Kettering, at which time Kettering accepted her vaccination exception. Kettering did not require other employees to obtain doctors' notes, let alone multiple doctors' notes, documenting vaccination exceptions.

24. Beginning in or around October 2018, Defendants routinely scheduled Crossley with fewer patients than other Speech Pathologists with the same, or less, experience and credentials, systematically reducing the number of hours Crossley spent performing meaningful work.

25. On or about August 20, 2019, Kettering terminated Crossley allegedly due to HIPPA violations.

26. Crossley never accessed patient charts for any purpose other than business purposes including treating patients, scheduling, teaching and to confirm patient status. Other employees accessed charts for these same business purposes and were not similarly disciplined or accused of HIPPA violations.

27. Defendants discriminated against Crossley throughout her employment, and upon her termination due to her age and disabilities.

28. Defendants failed to provide Crossley with a reasonable accommodation when it reduced Crossley to part-time status without allowing Crossley to renew her CPR certification through a third party, providing an alternate dummy, or ensuring that another employee could be present to perform CPR during Crossley's shifts, none of which would have imposed an undue hardship on Kettering.

29. Defendants cannot articulate a legitimate, non-discriminatory reason for Crossley's termination.

30. Defendants' reason for Crossley's termination was pretextual.

## Count One
**Disability Discrimination – Americans with Disabilities Act 42 U.S.C.S. §§ 12101-12213**
**(Against Kettering)**

31. Crossley reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

32. This claim is brought pursuant to the ADA.

33. Crossley is disabled, as she has suffered from Ehlers-Danlos Syndrome since 2004 and Multiple Myeloma since June of 2018.

34. Kettering mistakenly believed that Crossley's disabilities substantially limited her ability to work, although Kettering had no legitimate reason to think so.

35. Crossley was qualified for her position at Kettering as a Speech Pathologist, with or without a reasonable accommodation.

36. Crossley suffered an adverse employment decision when she was abruptly terminated due to her age and disabilities.

37. Kettering did not have a legitimate business reason to terminate Crossley.

38. Crossley's supervisor at Kettering made discriminatory comments and took discriminatory actions in advance of terminating Crossley.

39. The circumstances give rise to an inference of unlawful discrimination, or a nexus exists between the adverse action suffered and Crossley's perceived disabilities because Kettering terminated Crossley shortly after Crossley returned to work following her stem cell transplant.

40. Kettering discriminated against Crossley because of her disabilities by taking the following non-exhaustive list of actions: reducing the number of patients assigned to Crossley for rehabilitation, refusing to give Crossley a reasonable accommodation that would allow her to remain a full-time employee, threatening to report Crossley to Human Resources if she continued to use her handicapped parking placard, terminating Crossley's employment, creating false reasons for termination, and/or by otherwise discriminating against Crossley in the terms, privileges, and conditions of her employment.

41. As a direct and proximate result of Kettering's conduct, Crossley has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and loss of salary, benefits and other terms, privileges, and conditions of employment for which Kettering is liable.

42. Kettering's conduct was willful, wanton, reckless and/or malicious for which Kettering is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

### Count Two
### Disability Discrimination – O.R.C. 4112.99
### (Against Kettering and Isaac)

43. Crossley reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

44. Crossley is disabled, as she has suffered from Ehlers-Danlos Syndrome since 2004 and Multiple Myeloma since June of 2018.

45. At all times relevant herein, Crossley was regarded as having a physical impairment within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

46. At all times relevant herein, Crossley was a qualified individual with disabilities within the meaning of R.C. S 4112.01(A)(13) of the Ohio Revised Code.

47. Defendants knew that Crossley was disabled or regarded her as disabled because Defendants communicated with Crossley regarding her disabilities and Crossley provided Defendants with doctors' notes documenting her disabilities.

48. Defendants discriminated against Crossley because of her disabilities by taking the following non-exhaustive list of actions: reducing the number of patients assigned to Crossley for rehabilitation, refusing to give Crossley a reasonable accommodation that would allow her to remain a full-time employee, threatening to report Crossley to Human Resources if

she continued to use her handicapped parking placard, terminating Crossley's employment, creating false reasons for termination, and/or by otherwise discriminating against Crossley in the terms, privileges, and conditions of her employment.

49. As a direct and proximate result of Defendants' conduct, Crossley has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendants are liable.

50. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

## Count Three
**Failure to Provide a Reasonable Accommodation – Americans with Disabilities Act 42 U.S.C.S. §§ 12101-12213**
**(Against Kettering)**

51. Crossley reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten here.

52. Crossley is disabled, as she has suffered from Ehlers-Danlos Syndrome since 2004 and Multiple Myeloma since June of 2018.

53. Crossley was qualified for her position as a Speech Pathologist at Kettering even though she has disabilities.

54. Kettering knew that Crossley was disabled or regarded her as disabled because Kettering communicated with Crossley regarding her disabilities and Crossley provided Kettering with doctors' notes documenting her disabilities.

55. Crossley requested a reasonable accommodation for her disabilities when her CPR certification allegedly expired.

56. Kettering failed to provide Crossley with a reasonable accommodation for her disabilities when it refused to engage in an interactive process to find an effective accommodation and instead reduced Crossley's employment status to part-time.

57. Kettering's conduct was willful, wanton, reckless and/or malicious for which Kettering is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

**Count Four**
**Age Discrimination – Age Discrimination in Employment Act 29 U.S.C.S. § 623**
**(Against Kettering)**

58. Crossley reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten herein.

59. This claim is brought pursuant to the ADEA.

60. Crossley was born on April 14, 1952, and at all relevant times herein was over forty (40) years of age.

61. Kettering discriminated against Crossley because of her age by taking the following non-exhaustive list of actions: reducing the number of patients assigned to Crossley for rehabilitation, repeatedly suggesting that Crossley should retire, reducing her employment status to part-time, terminating Crossley's employment, creating false reasons for termination, and/or by otherwise discriminating against Crossley in the terms, privileges, and conditions of his employment.

62. Kettering did not reduce the number of patients assigned to younger employees, suggest a timeline for younger employees to retire, reduce any younger employees' employment status to part-time, or terminate any younger employees who acted in the same manner as Crossley.

63. Kettering willfully discriminated against Crossley, in that Kettering knew or

showed reckless disregard for the fact that its conduct was prohibited by the ADEA.

64. As a direct and proximate result of Kettering's conduct, Crossley has suffered and will continue to suffer lost wages and fringe benefits.

### Count Five
### Age Discrimination – O.R.C. 4112.14 and 4112.99
### (Against Kettering and Isaac)

65. Crossley reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten herein.

66. At all relevant times herein, Crossley was over forty (40) years of age.

67. On or about August 20, 2019, Defendants terminated Crossley's employment.

68. At the time of her termination, Crossley was more than qualified for the position she held at Kettering.

69. Defendants discriminated against Crossley because of her age by taking the following non-exhaustive list of actions: reducing the number of patients assigned to Crossley for rehabilitation, suggesting that Crossley should retire, reducing Crossley's employment status to part-time, terminating Crossley's employment, creating false reasons for termination, and/or by otherwise discriminating against Crossley in the terms, privileges, and conditions of his employment, in violation of Chapter 4112.14 and 4112.99 of the Ohio Revised Code.

70. Defendants did not reduce the number of patients assigned to younger employees, suggest a timeline for younger employees to retire, reduce any younger employees' employment status to part-time, or terminate any younger employees who acted in the same manner as Crossley.

71. As a direct and proximate result of Defendants' conduct, Crossley has suffered and will continue to suffer lost wages and fringe benefits.

WHEREFORE, Plaintiff Marilyn Crossley demands judgment against Defendant

Kettering Adventist Healthcare d/b/a Kettering Health Network and Defendant Belinda Isaac as follows:

    i)     Monetary damages including back pay, front pay and benefits;

    ii)    Statutory liquidated damages;

    iii)   Expert witness fees and attorneys' fees and costs;

    iv)   Compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00; and

    v)    Any and all other relief, which the Court deems just and appropriate.

Respectfully Submitted,

*/s/ Katherine C. Ferguson*
Katherine C. Ferguson (0079207)
Lindsay M. Nelson (0095560)
Kooperman Mentel Ferguson Yaross Ltd.
100 South 4th Street, Suite 100
Columbus, Ohio 43215
Telephone: (614) 344-4800
Facsimile: (614) 344-4800
kferguson@kmfylaw.com
lnelson@kmfylaw.com
*Counsel for Plaintiff Marilyn Crossley*

## JURY DEMAND

Plaintiff hereby requests a jury.

*/s/ Katherine C. Ferguson*
Katherine C. Ferguson

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 21, 2020 a copy of foregoing *Amended Complaint* was filed electronically. I hereby certified I served the Defendants' counsel via electronic mail on September 21, 2020:

Timothy G. Pepper
Taft Stettinius & Hollister LLP
40 North Main Street
Dayton, Ohio 45423
Email: pepper@taftlaw.com

*Counsel for Defendants*

      And upon Defendants via regular mail at:

Belinda Isaac
9780 Foxhound Drive 28
Miamisburg, OH 45342

Belinda Isaac
912 Greenway Court
Miamisburg, OH 45342

Kettering Adventist Healthcare d/b/a Kettering Health Network
c/o Michael D. Macomber
Statutory Agent
1 Prestige Place, Suite 580
Miamisburg, OH 45342

                                                   */s/ Katherine C. Ferguson*
                                                    Katherine C. Ferguson