IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| MARILYN CROSSLEY, | Case No. 3:20-cv-319 |
| Plaintiff, | District Judge Michael J. Newman |
| vs. | Magistrate Judge Caroline H. Gentry |
| KETTERING ADVENTIST HEALTHCARE d/b/a KETTERING HEALTH NETWORK, et al., | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's "Motion for Sanction Based On Spoliation of Evidence" (ECF No. 37). Specifically, Plaintiff requests an adverse-inference jury instruction that certain documents that were destroyed would have been favorable to Plaintiff's claims in this litigation. (*Id.* at 13, PageID 251.) For the reasons set forth below, the Court denies Plaintiff's Motion without prejudice to renewal.

**I.  BACKGROUND**

Plaintiff Marilyn Crossley is a speech pathologist who worked for Defendant Kettering Adventist Healthcare d/b/a Kettering Health Network ("Kettering") until August 20, 2019, when Kettering terminated her employment. From 2010 until 2019, Defendant Belinda Isaac supervised Plaintiff. (Am. Compl., ECF No. 7 at 2-3, PageID 26-27.)

1

When her employment was terminated, Plaintiff was approximately 67 years old and had been diagnosed with serious health conditions. She took a medical leave of absence from November 27, 2018 through March 4, 2019 to undergo treatment. Kettering terminated her employment approximately five months after she returned to work. (Am. Compl., ECF No. 7 at 3-4, PageID 27-28.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on January 8, 2020. She filed this lawsuit on July 22, 2020. In her Complaint, Plaintiff alleges that Defendants' termination of her employment violated federal and state laws that prohibit discrimination on the basis of age and disability. Defendants deny the allegations and claim that Kettering terminated Plaintiff's employment because she violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA). (Mem. in Opp., ECF No. 45 at 8, PageID 488.)

Interim HR Manager Megan Douglas took handwritten notes during a meeting that was held on August 15, 2019, and was attended by Plaintiff, Defendant Isaac, and Ms. Douglas. The purpose of the meeting was to investigate the alleged HIPAA violations. (Motion, ECF Doc. 37 at 3, PageID 241). Five days later, Kettering terminated Plaintiff's employment. (*Id*. at 4, PageID 242). That same day, Ms. Douglas prepared and sent a detailed email that described her August 15 meeting with Plaintiff. The first sentence of the email states: "**Here is a final email to summarize our meeting with [Plaintiff], including both mine and [Ms. Isaac]'s notes. This is just for additional documentation.**" (Email, ECF Doc. 37-3 at 1, PageID 276) (emphasis in original).

Ms. Douglas destroyed her handwritten notes at the end of 2019. (Motion, ECF Doc. 37 at 4, PageID 242). During her deposition, Ms. Douglas testified that she regularly wrote confidential and personal information in her notebooks, and that her practice was to file anything that she felt she needed to file. Due to privacy and confidentiality concerns, she routinely used a new notebook every year and shredded that notebook at the end of the year. (*Id*. at 3-5, PageID 241-43.)

It is unclear whether Defendant Isaac took notes during the meeting. Ms. Isaac testified in her deposition that she typically took notes during investigative interviews like the August 15 meeting. However, she did not recall whether she took notes during that particular meeting. (Motion, ECF Doc. 37 at 5, PageID 243). Plaintiff argues that Defendant Isaac must have taken notes because Ms. Douglas referred to them in her email. But Ms. Douglas has not confirmed this assumption or explained her comment in the email. While it is certainly reasonable to infer from Ms. Douglas' comment that Ms. Isaac took notes, it is not the only reasonable inference. Moreover, even if Ms. Isaac did take notes during the meeting, there is no evidence that they were destroyed, much less evidence as to how, when, by whom, and why they were destroyed.

Accordingly, the Court does not have sufficient information to award sanctions based on the theorized destruction of Ms. Isaac's notes (which may not ever have existed). Instead, the Court will confine its analysis to Ms. Douglas's destroyed notes.

II.     LAW AND ANALYSIS

The Court has broad discretion, based on its inherent powers, to impose sanctions for the spoliation of evidence. *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009).

When exercising its discretion, the Court considers the "fairness and punitive functions" of sanctions. *Id*. at 652. The Court must also adjust the severity of the sanction to match the culpable party's degree of fault, which is a fact-intensive inquiry. *Id*. at 652-53.

To establish a basis for awarding sanctions, the moving party (here, Plaintiff) must prove: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 533 (6th Cir. 2010). The Court will address each of these elements in turn.

      **A.**    **Kettering Did Not Have An Obligation To Preserve The Notes.**

The first element of the *Beaven* test requires Plaintiff to prove that Kettering had an obligation to preserve Ms. Douglas's handwritten notes. Plaintiff argues that common-law principles and an EEOC regulation, 29 C.F.R. § 1602.14, required Kettering to preserve Ms. Douglas's handwritten notes. Neither argument is persuasive.

          ***1.  Kettering did not have a common-law duty to preserve Ms. Douglas's notes before she destroyed them at the end of 2019.***

It is unreasonable to expect people and businesses to retain (and maintain) every document that they create, edit, receive, or review. The common-law duty to preserve documents therefore only arises if a party "has notice that the evidence is relevant to litigation or … should have known that the evidence may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008).

4

Because Ms. Douglas destroyed her notes before Plaintiff filed this lawsuit, she did not "ha[ve] notice that the evidence is relevant to litigation." *Goetz*, 531 F.3d at 459. The remaining issue is whether Ms. Douglas "should have known that the evidence may be relevant to future litigation" at the end of 2019. *Id*.

This standard is not met by the theoretical possibility of litigation, which arises after almost every employment decision or business transaction. Instead, the Court will only find that a party should have known that evidence may be relevant to future litigation if there was reason to believe that litigation was "probable" when the evidence was destroyed. *Morgan v. City of Columbus*, No. 2:17-cv-829, 2020 U.S. Dist. LEXIS 153659, *25 (S.D. Ohio Aug. 25, 2020) (citing *O'Brien v. Ed Donnelly Enters.*, 2010 U.S. Dist. LEXIS 42271, *9-10 (S.D. Ohio Apr. 29, 2010)). In addition, the moving party must show that the spoliating party had reason to be aware that the destroyed evidence, specifically, was relevant to future litigation. *Siefert v. Hamilton Cty. Bd. of Comm'rs*, No. 1:17-cv-511, 2021 U.S. Dist. LEXIS 239212, *8 (S.D. Ohio Dec. 15, 2021).

Neither requirement is met here. Plaintiff has not identified or provided evidence of any reason why Kettering should have believed, in 2019, that litigation was probable. Nor has Plaintiff identified any reason why Kettering should have known, in 2019, that Ms. Douglas's handwritten notes (which, after all, she had summarized in an email) would be relevant to future litigation. Therefore, based upon the facts currently in the record, the undersigned concludes that Kettering did not have a common-law duty to preserve Ms. Douglas's handwritten notes before she destroyed them at the end of 2019.

5

### 2. *Kettering was not required by 29 C.F.R. § 1602.14 to preserve Ms. Douglas's notes because it preserved her summary of the notes.*

The parties disagree as to the scope and application of 29 C.F.R. § 1602.14, which provides in relevant part as follows:

> Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record, or the personnel action involved, whichever occurs later….

29 C.F.R. § 1602.14. The parties dispute whether Ms. Douglas's handwritten notes constituted a personnel or employment record within the meaning of this regulation.

Assuming *arguendo* that Ms. Douglas's handwritten notes constituted a personnel or employment record within the meaning of 29 C.F.R. § 1602.14, the Court holds that Ms. Douglas (and Kettering) complied with this regulation by creating and preserving an electronic summary of those notes. *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 558-59 (7th Cir. 2001) ("It is sufficient that the employer retains only the actual employment record itself, not the rough drafts or processes which may lead up to it."); *Hill v. Phillips 66 Co.*, No. 14-cv-102, 2015 U.S. Dist. LEXIS 50776, *5 (N.D. Okla. Apr. 17, 2015) (holding that if Section 1602.14 imposed a duty to preserve interview notes, "that duty was satisfied by preservation of the Ethics Investigation Summary . . . made from [the] interview notes"); *Lichwick v. Verizon*, No. 08-cv-3892, 2011 U.S. Dist. LEXIS 97552, *14-15 (S.D.N.Y. Aug. 30, 2011) (declining to draw an adverse inference based on 29 C.F.R. § 1602.14 where the interviewer "transcribed her handwritten notes into an

6

electronic file, which has been preserved"); *Nichols-Villalpando v. Life Care Centers of Am., Inc.*, No. 05-2285-CM, 2007 U.S. Dist. LEXIS 39694, *9 (D. Kan. May 30, 2007) ("Plaintiff provided no authority for her position that notes incorporated into a final report must be maintained under 29 C.F.R. § 1602.14. And the court has found none."). Therefore, under the circumstances of this case, Kettering was not obligated to preserve Ms. Douglas's handwritten notes to comply with 29 C.F.R. § 1602.14.

### B. Ms. Douglas Did Not Have A Culpable State Of Mind.

The second element of the *Beaven* test requires Plaintiff to prove that Ms. Douglas destroyed her handwritten notes with a culpable state of mind. In *Beaven*, the Sixth Circuit followed *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002), and held that negligence is sufficient to establish a culpable state of mind. This holding in *Beaven* remains the law in the Sixth Circuit today.

It is important to note, however, that the Sixth Circuit decided *Beaven* before Federal Rule of Civil Procedure 37(e) was amended in 2015. Under Rule 37(e)(2), the Court cannot award an adverse-inference jury instruction based on negligent spoliation of electronically stored information (ESI). Instead, the moving party must prove that the spoliating party intended to deprive its opponent of the ESI:

> FRCP 37(e) Failure to Preserve Electronically Stored Information. If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> \*\*\*\*
>
> (2) ***only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation*** may: (A) presume

7

>    that the lost information was unfavorable to the party; (B) instruct the jury
>    that it may or must presume the information was unfavorable to the party;
>    or (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(2) (emphasis added).

Significantly, the Advisory Committee rejected the Second Circuit's holding in *Residential Funding* that negligence is sufficient to award severe sanctions—which is the same holding that the Sixth Circuit adopted in *Beaven*, 622 F.3d at 554. The Committee explained that a party that requests severe sanctions for the spoliation of ESI must prove intent because negligent destruction does not logically support an adverse inference:

>    Adverse-inference instructions were developed on the premise that a party's
>    intentional loss or destruction of evidence to prevent its use in litigation
>    gives rise to a reasonable inference that the evidence was unfavorable to the
>    party responsible for loss or destruction of the evidence. Negligent or even
>    grossly negligent behavior does not logically support that inference.
>    Information lost through negligence may have been favorable to either
>    party, including the party that lost it, and inferring that it was unfavorable
>    to that party may tip the balance at trial in ways the lost information never
>    would have. The better rule for the negligent or grossly negligent loss of
>    [ESI] is to preserve a broad range of measures to cure prejudice caused by
>    its loss, but to limit the most severe measures to instances of intentional
>    loss or destruction.

Fed. R. Civ. P. 37(e) Advisory Committee's Note to 2015 Amendment.

Because this dispute involves the destruction of handwritten notes, and not ESI, it is not governed by Rule 37(e). Nevertheless, the Advisory Committee's reasoning is instructive and persuasive. It is also consistent with the Sixth Circuit's holding that courts should tailor the severity of the sanction to the degree of fault. *Beaven*, 622 F.3d at 553 (citing *Adkins*, 554 F.3d at 652-53); *see, e.g., Stocker v. U.S.*, 705 F.3d 225, 236 (6th Cir. 2013) (holding that more than negligence was required to award an adverse-inference

8

instruction based on a destroyed envelope because the IRS could have reasonably failed to understand its relevance to future litigation). And the Court is mindful that applying different rules based solely upon the format of the destroyed evidence (i.e., ESI versus non-electronic evidence) could lead to confusion, particularly since there does not appear to be a principled reason why different formats should require different rules.

For all of these reasons, the Court holds that Plaintiff cannot rely on an allegation that Ms. Douglas acted negligently to support her request for an adverse-inference jury instruction. Instead, Plaintiff must prove that Ms. Douglas intended to deprive her of the use of the handwritten notes in litigation to obtain such a severe sanction.

Plaintiff has not met this burden. There is no evidence presently before the Court that Ms. Douglas intentionally destroyed her notes to prevent Plaintiff from using them during this litigation. To the contrary, because litigation was not pending when the notes were destroyed, the mere fact of destruction "'does not point to consciousness of a weak case' and intentional destruction." *Beavens*, 622 F.3d at 553 (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 797 (6th Cir. 2006)). Accordingly, Plaintiff has not proven that Ms. Douglas had a culpable state of mind, and the second element of the *Beaven* test has not been met.

    **C.**     **A Reasonable Trier Of Fact Could Not Find That Ms. Douglas's Handwritten Notes Supported Plaintiff's Claim Of Pretext.**

The third element of the *Beaven* test requires Plaintiff to prove not only that Ms. Douglas's handwritten notes were relevant to her claims, but also that "a reasonable trier of fact could find that [they] would support" her claims. 622 F.3d at 533; *accord Allied*

9

*Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 511 F. App'x 398, 408 (6th Cir. 2013). If the destroyed information has doubtful or minimal relevance to the contested issue, then an adverse-inference instruction should not be awarded. *Allied Erecting & Dismantling Co.*, 511 F. App'x at 408 (denying adverse-inference instruction where "it is doubtful that these … documents would reveal Genesis's state of mind"); *Johnson v. Metro. Gov't of Nashville & Davidson Cty.*, 502 F. App'x 523, 533 (6th Cir. 2012) (denying adverse-inference instruction where the destroyed information "is of minimal relevance to proving [plaintiffs'] case for reverse discrimination").

  Plaintiff has failed to show that Ms. Douglas's handwritten notes could have supported her claim of pretext. Plaintiff contends that the notes could have shown that she "provided facts seriously undermining the legitimacy of the termination decision" during the meeting. (Reply, ECF No. 51 at 13, PageID 1043.) As an initial matter, this argument presumes that Ms. Douglas wrote down everything that Plaintiff said during the meeting. But there was no requirement that Ms. Douglas create a verbatim record of Plaintiff's statements, and there is no evidence that she did so. More importantly, even if Ms. Douglas did record all of Plaintiff's statements, it is unclear how such a transcript would support Plaintiff's claim of pretext. Because the notes are of doubtful or minimal relevance to Plaintiff's claim of pretext, the third *Beaven* element has also not been met.

10

### III. CONCLUSION

Based upon the evidence in the record at this juncture, the Court concludes that Plaintiff has failed to establish the elements required for issuance of an adverse-inference jury instruction, and therefore DENIES Plaintiff's Motion (ECF No. 37). Because it may be possible for Plaintiff to present additional evidence at trial to support her request for an adverse-inference jury instruction, the Motion is denied without prejudice to renewal.

**IT IS SO ORDERED.**

/s/  *Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

Any party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio Civ. R. 72.4.